The facts of this case sufficiently appear from the different decrees which have been pronounced on it. It was first heard by Chancellor Dunkin, who made the following decree, July Term, 1838.
*436 George Gayden died, intestate, in the fall of 1818, leaving a widow and seven children. He owned a tract of land, on which he resided, worth about $600: and his personal estate, exclusive of three negroes, was appraised at $298 62;, the negroes were apprased at $900.
Fanny Gayden, the widow of the intestate, and Peter Flemming, administered on the estate. The bill was filed ■ on 5th February 1838, for an account of the personal estate, and partition of the realty.
It may be as well, in the first place, to dispose of the question of partition. The defendants, William Brown and Alston Clark, claim the lands under a purchase at Sheriff’s sale. It appeared that in August, 1820, General Blair, the former Sheriff of Lancaster District, sold the land, under several executions in his office, against the administrator and admintratrix of George Gayden, deceased, to William M’Kenna, who conveyed all his right, title and interest to Fanny Gayden. In 1823 it was sold by Abraham Perry, Sheriff of Lancaster, under execution against Fanny Gayden, It was again purchased by Mc-Kenna, who conveyed to Gayden and wife, (Fanny Gay-den having intermarried with Spencer Gayden,) and the defendants hold under mesne conveyances from them. The validity of the sales by the Sheriff, did not seem to be disputed; but, if it had been, X think the- testimony was satisfactory, and that, under the settled doctrine of the Court in this State, a good title to the land of the intestate was vested in the purchaser. Then it was said, that when M’Kenna conveyed to Mrs. Gayden, he was paid from money belonging to the e,state, and that the defendants were aware of it. It is admitted, in the answer of Mrs. Gayden, that á portion of the money paid to Mr. M’Kenna, belonged to the estate, but there was no evi-that any person was aware of this, except Mr. Gayden himself. It may have been a mal-administration pro tanto, but cannot affect the title of the purchasers.
On 10th November, 1818, an order was granted, by the Ordinary, for the sale of the personal estate of George Gayden, deceased; on 21st November, the personal estate was appraised at $1298 62, and the 11th December it was sold for $823 71. The negroes were purchased by the *437 administratrix at $600, being $300 less than the appraised value. I should not hesitate tQ set aside this sale, if it were important, or if it had not been entirely disregarded by the subsequent proceedings. But the negroes were all levied upon, twelve months afterwards, under executions against the administrator and administratrix. Two were sold by the Sheriff, and no question was made in regard to them. The third, Maria, escaped from the Sheriff, and came, or was placed, in the possession of Elij ah Gayden, another of the defendants.
Maria was clainied by Elijah Gayden, under an adverse possession of eighteen years,- originating in the circumstances' about' to be stated. It was alleged, in his answer, that the intestate.being indebted to him, the sum of $360, agreed to secure him by. a mortgage of Maria; and if the sum should not be paid on 21st Judy 1820, the defendant should become the owner of Maria-,, on paying an additional sum of $100. The execution of the,mortgage, dated 21st July 1818, was proved by the subscribing witness, who also proved that Elijah Gayden gave to the intestate, at the same time, his note for $100. This was all the testimony on the subject of the contract. In August, 1820, the defendant paid $100 to the administratrix, and has been in possession of Maria from about that time. The impression left on my mind from the evidence, is that this negro was not worth • more than $100.. I think it also very clear that, if Maria was not delivered to Elijah Gay-den by the administratrix, he took possession, as owner, with her knowledge and acquiescence. Whether the title was or was not perfected I think- the character of Elijah Gayden was thenceforth fixed, and that he is entitled to the protection of the statute.
It is alleged in the bill that Fanny Gayden, the admin-istratrix, and the mother of the complainants, and her husband, Spencer Gayden, are insolvent, that the sureties to the administration bond are also insolvent, and that the slovency of Peter Flemming, the administrator, is doubtful. <
I am not prepared to say that any mal-administration has been established against Peter Flemming. ' But, by entering into the administration bond, joint administrators be *438 come sureties for each other, Lucas vs. Curry’s Executors, 2 Bailey, 406 and so far as the administratrix may he in default, I think Flemming is responsibible. What, then, is the case presented as to her'? Mrs. Gayden received $100 from Elijah Gayden, for which she is accountable. The personal estate, exclusive of the negroes, was worth less than $400, and was of such a character, generally, as is used and consumed in the maintainance of a family. Her husband died in 1818, and left her with seven children, the complainants, the youngest of whom was about three years of age, and the eldest twelve or thirteen years old. The widow was entitled to one third of the estate, and, I suppose, she was authorized to apply to the support of the children what might be necessary, from their share. It was in evidence, too, that the intestate left debts unpaid, to a considerable amount in proportion to his means: strictly speaking the complainants may be entitled to an account; but the interest of all parties would seem to be subserved by putting an end to this unprofitable litigation.
It is ordered and decreed that, as to the defendants, Brown and Clark, the bill be dismissed, with costs — as to the other defendants, that the bill be dismised, without costs.
From this deeree, there was an appeal to this Court. This Court delivered the following opinion, December Term, 1838, by Chancellor Johnston, viz:
This Court concurs with the Chancellor in dismissing the bill as against Clark and Brown, who purchased the land. The Chancellor states, that the executions bound the land of the intestate, and, therefore, the entire fee passed to the purchasers at Sheriff’s sale. We concur also in so much of the decree as dismisses the bill, as to Elijah Gayden. But we think the plaintiffs were, strictly, entitled to an account from the administrator, and although they may find the investigation unprofitable, if they insist on it, it cannot be denied them. In taking the account, however, we think proper to state, that, in equity, one administrator is not bound for the acts of another, in which he did not concur: this doctrine was ruled in 4 Eq. R. 76 92, and was again held by this Court, at May Term, 1838, in *439 the case of O' Neall vs. Herbert, to which I refer for the reason of the decision. See also, Toller, 472 and 2 Story 620 and 1280 et seq. In stating the accounts against the administrator allowance should be made for sums necessarily expended, and property consumed, in the support of the children; distributing the allowance according to the circumstances of each child, when these happen to differ. The profits arising from the sources of the respective children should be set off. So much for the general accountability of the administrators. There are some other points upon which this court are desirous, that further inquiry be made upon the circuit. It appears, obscurely, from what is before us, that George Gayden died in the fall of 1818, and that an inventory was made of part of his personality on the 21st of November of the same year, amounting to $1298 62, which, together with some other property omitted in the inventory, was sold on the 11th of December, for $823 71; that, at this sale, Flemming, the administrator, purchased, at the appraised rate, property to the amount of about $31, and that Mrs. Gayden, the administratrix, purchased at $738, property which had been appraised at $1127. Upon comparing the appraisment with the sale bill, it appears that every article purchased by strangers brought the appraised value; or rather more; but that the three negroes which were appraised at $900 were bid off by the administratrix (and they were the first property sold, and all in one lot;) for $600, the residue of her purchases, amounting to $138, were of articles appraised at $271. Supposing these sales fair, they placed in the hands of Mr. Flemming, at the time the sale bill fell due, which was October 11th, 1819, the amount of his purchases, $31; in the hands of Mrs. Gayden, the amount of her purchases $738; and in their hands, conjointly, the amount due from other purchasers, of $54: in all $823.
The debts which appear to have existed against the intestate, exclusive of that to Elijah Gayden, amounted to about $445. Add the debt due to Elijah Gayden, in August, 1821, for $260, and the whole of the debts did not much exceed $700; and yet beginning in August 1820, but a little over 7 months from the time the sale bill became due, and not much, exceeding a year and a half from *440 the time of the sale, the whole of this property, together with a tract of land worth $600; property, by appraisment, and'valuation, worth near 1900 dollars, was all sold by the end of 1821 for debts, not much exceeding 700 dollars; while the administrators had more than enough to meet them in their own hands,
. If we deduct 400 dollars, which seems to be the value put by witnesses on the negroes mortgaged to Elijah Gay-den, from the purchases made by Mrs. Gayden; and add to the balance the 100 dollars, which he paid her when he took possession of the negro; she was still in possession of 438 dollars which, with the sums due by her co-administrator and the other purchasers, would amount to 523 dollars, tb meet the other creditors; which was more than sufficient for .that purpose. On the other hand, if the. purchases made by the administration, at their own sale were avoidable of course, (which until lately I néver thought questionable, but which is now questioried, or if they were not fairly madé, then a question may arise, whether the administrators are not chargeable for having prevented the sale ordered by the Ordinary, by interposing their own bids, and subjected themselves to the imputation of having, by voluntary acts of mal-administration, deprived the estate of funds to pay the debts; and whether they are not liable to acqount for the true value of the property, sacrificed in consequence of their neglect, (see Wibber vs. Higgins, MSS. at Columbia, on appeal, November 1819 and Ten Eyck vs Hart, 2 J. C. Report.) Upon hone of these questions, is this court disposed to give an opinion at present; preferring to let the facts be moré clearly brought before the Circuit Court on another trial: and to obtain the benefit of its opinion upon then! Of course, the .case may be varied by the evidence to be ■in-introduced, and it would be improper to anticipate it by any opinion here.
The account will not be taken until the trial on the merits is had. Let the cause be remanded to the circuit Court.
J. JOHNSTON.